**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,

               Plaintiff,

      -against-

BALTIC AUTO SHIPPING, INC.,
TRIPS LOGISTICS CORP.,
FATHI MOHAMED ABDUSALAM ALDUKALI,
and JOHN DOES 1-10.

               Defendants.

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

Civil Action No. _____

**COMPLAINT IN ADMIRALTY**

<u>**COMPLAINT**</u>

Plaintiff, MSC Mediterranean Shipping Company S.A. ("MSC" or "Plaintiff"), by its attorneys ZEILER FLOYD ZADKOVICH (US) LLP, as and for its complaint against Defendants Baltic Auto Shipping, Inc. ("Baltic"), Trips Logistics Corp. ("Trips"), and Fathi Mohamed Abdusalam Aldukali (jointly "Defendants") alleges upon information and belief, as follows:

**THE PARTIES**

1.      At all times hereinafter mentioned, Plaintiff MSC was and now is engaged in the business of carrying merchandise by water for hire, and owned, operated, managed, chartered and/or otherwise controlled certain vessels for that purpose. MSC is organized and existing by virtue of the laws of a foreign state.

2.      At all times hereinafter mentioned, Defendant Baltic was and now is a shipping company engaged in the business of automobile transportation organized and existing by virtue of the laws of the state of Illinois.

3.      At all times hereinafter mentioned, Defendant Trips was and now is a shipping company engaged in the business of automobile transportation organized and existing by virtue of the laws of the state of Delaware and registered to do business in the state of Massachusetts.

4.      Upon information and belief, at all times hereinafter mentioned, Fathi Aldukali was and now is an individual with a business location in the state of Alabama.  On information and belief, Fathi Aldukali was a customer of Trips with respect to shipments of cargo relevant to this complaint.

5.      Upon information and belief, John Does 1-10 are additional individuals or legal entities which were involved in, caused and/or contributed to the damages suffered by MSC or to be suffered with respect to this action.

6.      MSC is and/or was the carrier of the shipments at issue herein and brings this action on its own behalf and/or as agent and trustee on behalf of and for the interest of all parties who may be or become interested in the shipments, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

## JURISDICTION AND VENUE

7.      This is an admiralty and maritime dispute within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Court's admiralty jurisdiction pursuant to Article III, Section 2 of the Constitution of the United States and 28 U.S.C. §1333.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1333, as this case arises out of contracts for the shipment of goods overseas by maritime transportation and this satisfies the requirement for federal admiralty jurisdiction. Bills of lading issued by Plaintiff with regard to concerned shipments provide that the port of loading was Savannah, Georgia. This Court has supplemental jurisdiction over common law claims pursuant to 28 U.S.C. §1367.

9.     Venue and personal jurisdiction are also proper pursuant to the terms incorporated in concerned bills of lading as used for the shipments at issue herein: "[if] the carriage contracted for hereunder was to or from the United States of America …suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. […] The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora." Clause 10.3, Jurisdiction, MSC Terms and Conditions.

### SUMMARY OF CLAIM

10.     This is an action for fraud, breach of maritime contracts and indemnity against the respective Defendants for (as further set forth in paragraphs which follow): (i) loading their respective cargoes in the other's container or otherwise causing their respective containers to be shipped to the wrong ports; (ii) allegedly loading one container with extremely valuable personal belongings, which belongings were never declared or otherwise identified or indicated in the bill of lading; (iii) upon final delivery, declaring a loss of the entire cargo containing the personal belongings; (iv) commencing a Libyan proceeding ("Libyan Proceeding") to recover the purported loss (including the value of the personal belongings), in violation of the forum selection clause of the bill of lading, and despite the omission of the personal belongings from the description of the cargo in the bill of lading at the start of carriage from the US; and (v) obtaining a judgment in the Libyan Proceeding in the amount of USD 1,573,200, comprised of declared items purportedly valued at USD 33,900 and undeclared personal belongings purportedly valued at USD 1,539,000.

11.     MSC is not privy to all knowledge of the underlying factual events and circumstances that gave rise to its claims, which knowledge is in the exclusive possession, custody and/or control of Defendants and/or their agents, and MSC is entitled to a reasonable opportunity

to conduct a further investigation and engage in discovery, and to amend or supplement its pleading as a result thereof.

## FACTS COMMON TO ALL CLAIMS

12.     In October/November 2018, two separate cargoes were shipped from Savannah, Georgia on separate vessels by and on behalf of different parties. One cargo, carried under MSC bill of lading MEDUBB535731, was apparently intended for Misurata, Libya ("Libya Bill"), and the other cargo, carried under MSC bill of lading MEDUBB535392 was apparently intended for Klaipeda, Lithuania ("Lithuania Bill") (collectively the "Bills").

13.     Upon information and belief, the cargo intended for Libya was loaded in a container ("stuffed") by Trips (or by an agent thereof). MSC had no responsibility for stuffing, or inspecting contents of, that container (container no. MEDU7914607). The information on the Libya Bill was provided by Trips, which provided the shipping instructions (providing, *inter alia*, the aforementioned container number plus purported contents description) and booked the relevant shipment, under booking number 038NY0417069.  The cargo box of the Libya Bill references only three cars (Toyotas). The Libya Bill lists Trips as shipper. Upon information and belief, the ultimate consignee/receiver of this shipment was Fathi Aldukali.

14.     Upon information and belief, the container intended for Lithuania was stuffed by Baltic (or an agent thereof). MSC had no responsibility for stuffing, or inspecting contents of, that container (container no. CAIU 780052-1). The information on the Lithuania Bill was provided by Baltic, which provided the shipping instructions (providing, *inter alia*, the aforementioned container number plus purported contents description) and booked the relevant shipment. The cargo box for the Lithuania Bill references four passenger cars (various brands), and Baltic is listed as the shipper and consignee.

4

15.     Each of the Bills refers to and incorporates by reference MSC's standard terms and conditions, a true and correct copy of which is annexed hereto and made a part hereof as Exhibit A.

16.     Upon information and belief, Trips and Baltic used the same warehouse to load their respective containers.

17.     Upon information and belief, the single warehouse used by Trips and Baltic was under the ownership, possession or control of Baltic.

18.     Upon information and belief, Container no. MEDU7914607 (which was headed for Libya) was incorrectly stuffed with the cargo intended for Container no. CAIU 780052-1 (which was headed for Lithuania) and, likewise, Container no. CAIU 780052-1 was incorrectly stuffed with the cargo intended for MEDU7914607.

19.     Upon information and belief, Fathi Aldukali was the ultimate shipper, receiver, and owner of the cargo intended for Container no. MEDU7914607.  The basis for such information and belief is writings from the Libyan Proceeding.

20.     Through the wrongful acts, negligent acts or other fault of the shippers, Baltic, Trips, and/or Fathi Aldukali (or their respective agents), the container holding the cargo identified by the Libya Bill was shipped to and unloaded in Lithuania, and the container holding the cargo identified by the Lithuania Bill was shipped to and unloaded in Libya.  Basically, Trips and/or Baltic put the wrong cars in the wrong containers, and one or more of the defendants misrepresented the contents of the cargo which was intended to go to Libya, but which was placed in the Lithuania-bound container instead.

21.     The container holding the items which were identified by the Libya Bill was unloaded in Lithuania on or about November 8, 2018.

22.     Baltic (on information and belief, acting on consultation with Fathi Aldukali) sought follow-on carriage of that shipment to Libya.  In connection with seeking that carriage, on or about January 10, 2019, Baltic provided a Letter of Indemnity ("LOI") to MSC against "any claim that may be [sic] arise from improper or non-compliant stowage of said cargoes / automobiles" and against "any liability, loss or damage of any nature, including, but not limited to damage to the container or equipment, vessel, terminal equipment, or other real or personal property, which may result from" the concerned carriage.  A copy of the LOI is annexed hereto as Exhibit B.

23.     Thereafter, the cargo from the container which had been landed in Lithuania was reloaded into a different container (on information and belief, by Baltic's agents) and shipped for carriage to Libya.  On or about January 23, 2019, a sea waybill for same was issued by MSC.  Thereafter, on January 25 and February 1, 2019, Baltic requested that a significant quantity of additional items, beyond the three Toyotas, be added to the shipper's statement of cargo description on the sea waybill.  A copy of the Sea WayBill, Number MEDUC0817356, is annexed hereto as Exhibit C.

24.     The shipment then reached Libya.  However, on information and belief, the Libyan receiver (or representative for that receiver) declined to receive the cargo.  Instead of taking same (and paying for ever accruing local charges such as storage and demurrage), the receiver (or representative for the receiver) commenced suit in Libya.

25.     In that regard, in 2019, Faraj Aldukali, as attorney for Fathi Aldukali (and understood to be a brother), brought the Libyan Proceeding, namely a proceeding filed in Libya, in the Ministry of Justice, North Tripoli Court of First Instance, Civil Circuit (eighth) (case number 131/2019), against MSC for the delayed delivery of the cargo intended for Libya and/or damage

thereto, seeking the amount of USD 1,573,200 as the alleged invoice value of the cargo, and a separate claim for USD 2,500,000 for moral damages.

26.     In the Libyan Proceeding, Aldukali claimed, *inter alia*, that damages occurred as a result of the opening and discharge of the container in Lithuania, thereby exposing the contents to the elements, as well as delay damages.

27.     In the Libyan Proceeding, the invoice value of the cargo was based on an invoice issued by Fathi Aldukali to himself. Only USD 33,900 of the claimed amount was based on the value of the three Toyotas. **The remaining amount on the invoice corresponds to items <u>not listed on the Libya Bill</u>, namely, bags and boxes full of very valuable personal effects and household goods, which purportedly shipped with and/or in the Toyotas.** A true and correct copy of the Aldukali invoice numbered AL18-207 is annexed hereto and made a part hereof as <u>Exhibit D</u>.

28.     According to the Aldukali invoice, the personal effects and household goods were comprised of 15 personal boxes, 5 personal bags, 5 auto parts boxes, 70 books, a surveillance system and camera, 7 luggage bags filled with family gifts, a large table and 8 chairs, and a sewing machine. *See*, Ex. D.  This description is the same as the description of additional items which Baltic sought to have added to its description of cargo during the period January 22 to February 1, 2019.

29.     Upon information and belief, the personal effects and household goods at issue were readily observable to whomever provided the description of goods for the Libya Bill and stuffed the container.

30.     On December 23, 2020, the Libyan court rendered its judgment and ordered MSC to pay USD 1,573,200 for the purported cargo loss and Libyan Dinars 40,000 for moral damages/legal costs (the "Libyan Judgment").

31.     MSC has timely filed an appeal in the Libyan Proceeding. The Libyan Appeal Court has yet to hear this appeal.

32.     As of the filing of this complaint, MSC has suffered damages by reason of the commencement of the Libyan Proceeding in violation of the forum selection clause contained in MSC's standard terms and conditions, and in the defense thereof, and the Libyan Judgment, together with associated costs which continue to accrue.

## FIRST CLAIM FOR RELIEF AGAINST ALDUKALI AND JOHN DOES 1-10
### (Fraud)

33.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 32 of this complaint as though fully restated herein.

34.     Fathi Aldukali and John Does 1-10 (one or more of whom may already be a party to this action) made knowingly false statements and omissions of material facts with respect to the purported loading of personal effects and household goods with and/or in the Toyotas.

35.     The knowingly false statements and omissions of material facts include, but are not limited to, listing only the three Toyotas in the Libya Bill and omitting the listing of the personal effects and household goods therefrom, despite their said inclusion as part of the cargo.

36.     As set forth on the Libya Bill, the shipper, not MSC, provides the list and description of packages and goods comprising the cargo and this information on the Libya Bill was thus false.

37.     The knowingly false statements and omissions of material facts may also include, but are not limited to, falsely contending in the Libyan Proceeding that the personal effects and

household goods were shipped with the Toyotas and that Aldukali sustained a monetary loss relating thereto, and in inflating the value of the items.

38.     Fathi Aldukali and John Does 1-10 made such statements and omissions of material facts with the intention to defraud MSC, *to wit* (i) induce MSC to unwittingly ship the personal effects and household goods, (ii) avoid having to pay the shipping costs of same to MSC, and/or (iii) artificially inflate the value of the cargo damage claim made in the Libyan Proceeding.

39.     MSC reasonably relied on the knowingly false statements and omissions of material facts made by Fathi Aldukali and John Does 1-10 with respect to the foregoing.

40.     By reason of the fraud of Fathi Aldukali and John Does 1-10, MSC has been caused to suffer damages in an amount to be determined at trial, but in the amount of at least USD 1,595,200, plus interest, costs and expenses (as well as liabilities, losses and damages which continue to accrue).

## SECOND CLAIM FOR RELIEF AGAINST ALDUKALI, BALTIC AND TRIPS
### (Breach of Maritime Contracts)

41.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 32 of this complaint as though fully restated herein.

42.     The Libyan and Lithuanian Bills incorporate the MSC Terms and Conditions by reference – "IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT."

43.     The MSC Terms and Conditions define "Merchant" as follows: "includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person."

44.     MSC entered into written contracts for the shipment of goods with Baltic and Trips, as shippers, and with Fathi Aldukali, as the owner of the goods, which were supported by valid consideration and are legally enforceable.

45.     MSC has duly performed all duties on its part to be performed pursuant to its contracts with Baltic and Trips, respectively, as shippers, and with Fathi Aldukali, as owner, for the shipment of the goods at issue.

46.     By reason of the errors, acts and omissions of Defendants, they have breached their duties owed to MSC as merchants of their respective cargoes and as otherwise owed pursuant to maritime contractual obligations, and thereby caused MSC to suffer damages.

47.     Defendants' breaches of contract include, but are not limited to, the following:

(a) Failing to properly stuff their respective containers with the corresponding items listed in their respective bills of lading;

(b) Failing to provide correct and accurate information to be reflected on the respective bills of lading with respect to the items being shipped;

(c) Failing to verify the accuracy of the information contained on the respective bills of lading;

(d) Loading and causing items that were not indicated in the Libya Bill to be shipped, namely personal effects and household goods;

(e)  Causing the claims which Fathi Aldukali has asserted with respect to shipment of items listed in the respective bills of lading and other purported items;

(f)  Giving rise to Fathi Aldukali's commencement of, and claims in, the Libyan Proceeding in respect of the Toyotas and other goods; and

(g)  Otherwise failing to properly perform with respect to the respective cargoes, as required by the agreements between the parties.

48.    MSC has been damaged by reason of the breaches of written contract on the part of Baltic, Trips and Fathi Aldukali.

49.    MSC's damages include, but are not limited to, those arising from the breach of the parties' forum selection clause, the costs of having to defend the Libyan Proceeding, the amount of the Libyan Judgment, and other direct, indirect, consequential, general, and special damages.

50.    By reason of the foregoing, MSC has sustained damages in an amount to be determined at trial, but in the amount of at least USD 1,595,200, plus interest, costs and expenses (as well as liabilities, losses and damages which continue to accrue).

## THIRD CLAIM FOR RELIEF AGAINST ALDUKALI, BALTIC AND TRIPS
### (Indemnification in Contract)

51.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 32, 42, 43 and 47 of this complaint as though fully restated herein.

52.    By reason of the premises, Defendants have breached their duties and obligations as the merchants of their respective cargo and as otherwise owed pursuant to maritime contractual obligations.

53.    Defendants are contractually obligated to indemnify MSC for any damages, loss or liability incurred by MSC which result from certain of Defendants' breaches of their contractual

obligations, such indemnification obligations set forth in, *inter alia*, Section 4.4, Section 11.4 and Section 14.6 of the respective bills of lading.

54.     Plaintiff has duly performed all duties and obligations on its part to be performed, thereby entitling it to the above-referenced contractual indemnification. Further, Fathi Aldukali's Libyan Proceeding was brought, and the resulting judgment obtained, in a forum other than the United States District Court for the Southern District of New York and where MSC could not invoke the admiralty impleader provisions of Fed. R. Civ. P. 14(c).

55.     By reason of the premises, MSC has sustained damages in an amount to be determined at trial, but in the amount of at least USD 1,595,200, plus interest, costs and expenses (as well as liabilities, losses and damages which continue to accrue).

## FOURTH CLAIM FOR RELIEF AGAINST BALTIC AND TRIPS
### (Indemnification under COGSA)

56.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 32 of this complaint as though fully restated herein.

57.     Section 3(3) of the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 USC 30701, provides that the carrier must, on demand of the shipper, issue to the shipper a bill of lading showing among other things the leading marks necessary for identification of the goods.

58.     However, pursuant to Section 3(5) of COGSA, the shipper must identify the goods in writing before the loading of such goods starts, "the shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars."

59.     By reason of the premises, Baltic and Trips have breached their duties and obligations as maritime shippers of their respective cargoes and as owed pursuant to COGSA.

60.    MSC has duly performed all duties and obligations on its part to be performed. Further, Fathi Aldukali's Libyan Proceeding was brought, and the resulting judgment obtained, in a forum other than the United States District Court for the Southern District of New York and where MSC could not invoke the admiralty impleader provisions of Fed. R. Civ. P. 14(c).

61.    By reason of the premises, MSC is entitled to indemnification from Baltic and Trips pursuant to COGSA for its liability to third parties and for other sustained, recoverable damages in an amount to be determined at trial, but in the amount of at least USD 1,595,200, plus interest, costs and expenses (as well as liabilities, losses and damages which continue to accrue).

### FIFTH CLAIM FOR RELIEF AGAINST BALTIC
#### (Indemnification Pursuant to LOI)

62.    Plaintiff repeats and realleges the allegations of paragraph 1 through 32 of this complaint as though fully restated herein.

63.    On or about January 10, 2019, Baltic issued its Letter of Indemnity to MSC. Thereafter, on or about January 25, 2019, Baltic disclosed the extent of items which had been included with the cargo which had been carried to Lithuania.

64.    MSC has, *inter alia*, incurred liability, loss or damage resulting from such carriage.

65.    By reason of the premises, MSC is entitled to indemnification from Baltic pursuant to the January 10, 2019 Letter of Indemnity for its liability to third parties and for other sustained, recoverable damages in an amount to be determined at trial, but in the amount of at least USD 1,595,200, plus interest, costs and expenses (as well as liabilities, losses and damages which continue to accrue).

## SIXTH CLAIM FOR RELIEF AGAINST ALDUKALI, BALTIC AND TRIPS
**(Declaratory Judgment)**

66.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 32 of this complaint as though fully restated herein.

67.     By reason of the premises, Defendants have breached their duties and obligations as maritime shippers, consignees, receivers, or merchants of their respective cargo and as owed pursuant to maritime contractual obligations and COGSA.

68.     By reason of the premises, Defendants owe indemnity to MSC and/or are liable for damages incurred by MSC.

69.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy to warrant the issuance of a declaratory judgment. There is an actual, justiciable controversy under 28 U.S.C. §§ 2201 and 2202 within the jurisdiction of this Court.

70.     By reason of the premises, and in the alternative, MSC is entitled to declaratory judgment that it has the right to be indemnified by Defendants or receive compensation from Defendants in the amount of at least USD 1,595,200, plus interest, costs and expenses, as awarded in the Libyan Proceeding (as well as liabilities, losses and damages which continue to accrue).

**WHEREFOR**E, Plaintiff, MSC Mediterranean Shipping Company S.A., demands judgment for costs and attorneys' fees, together with the following relief:

(a) with respect to the first claim for relief alleging fraud, damages in an amount to be determined at trial;

(b) with respect to the second claim for relief alleging breach of maritime contracts, damages in an amount to be determined at trial;

(c) with respect to the third claim for relief alleging a right to contractual indemnity,

damages in an amount to be determined at trial;

(d) with respect to the fourth claim for relief alleging a right to indemnity pursuant to

COGSA, damages in an amount to be determined at trial;

(e) with respect to the fifth claim for relief alleging a right to indemnity pursuant to the LOI

issued by Baltic, damages in an amount to be determined at trial;

(f) with respect to the sixth claim for relief, a declaratory judgment of its rights to

indemnification; and

(d) such other and further relief as the Court may deem just and proper.


Dated: New York, NY
       September 14, 2021

                          Respectfully Submitted,

                          /s/ Eva-Maria Mayer
                          Eva-Maria Mayer
                          eva.mayer@zeilerfloydzad.com
                          (617) 943 7957

                          Edward W. Floyd
                          ed.floyd@zeilerfloydzad.com
                          (917) 999 6914

                          Joseph Johnson
                          joe.johnson@zeilerfloydzad.com
                          (917) 375 9511

                          Jonas Patzwall
                          jonas.patzwall@zeilerfloydzad.com
                          (251) 414 6317

                          **ZEILER FLOYD ZADKOVICH (US) LLP**
                          215 Park Ave South, 11th Floor
                          New York, New York 10003

                          *Attorneys for Plaintiff*